

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

BTK:ADW
F. #2020R00871

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 15, 2023

By ECF

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Darren Charles Stewart
              Criminal Docket No. 21-42 (WFK)

Dear Judge Kuntz:

        The government respectfully submits this letter in advance of the defendant Darren Charles Stewart's sentencing, which is scheduled for March 17, 2023 at 1:00 p.m.  On April 8, 2022, the defendant pleaded guilty to six counts of distribution of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  For the reasons stated below, the government respectfully submits that a sentence within the United States Sentencing Guidelines (the "Guidelines" or U.S.S.G.") range of 151 to 188 months in custody is sufficient, but not greater than necessary, to achieve the goals of sentencing.

      I.      <u>Background</u>

        In January and March 2020, the defendant shared videos depicting the graphic sexual abuse of prepubescent boys to undercover agents ("UC") with the Department of Homeland Security, Homeland Security Investigations ("HSI"), using the social media platforms Twitter, Wickr and Telegram.[1]  Specifically, on January 2, 2020, using Twitter, the defendant directed a UC to his Wickr account, a more secure platform.  The following day, the UC communicated with the defendant over Wickr.  The defendant informed the UC that he "love[s] little boys."  When the UC asked the defendant if he had any access to or experience with children, the defendant responded: "No access . . . some fingering my nephew and Jacking off over him…years [a]go."  The defendant then sent the UC a video titled "10yo joey bathroom(2)," which is approximately

---

      [1]      Wickr and Telegram are both end-to-end encrypted messaging platforms.  For each of the Twitter, Wickr and Telegram accounts discussed herein, the defendant used the alias "Pete."

seven minutes long, depicting a prepubescent boy undressing in a bathroom and masturbating.  See Presentence Investigation Report dated July 19, 2022 ("PSR") ¶¶ 11–13; ECF No. 1.

On March 19, 2020, a second UC began communicating with the defendant, who was using a different Twitter account.  The defendant directed the second UC to his Telegram account, another secure platform.  Over Telegram, the defendant disclosed that he was into "0-10 no limit rough stuff" and further: "I'm into bubs and toddlers getting fucked up."  The defendant sent the second UC a video with the message, "Love rape nasty stuff."  The video is approximately 37 seconds long and depicts an infant being anally penetrated by an adult male penis, with the assistance of what appears to be an adult female.  PSR ¶ 14.

The following day, on March 20, 2020, the defendant sent the second UC four more videos of child pornography.  The defendant sent a 16-minute video with the messages, "Love that boy…My fave video" and "It's my fave, jacked off to it 300 times."  The video depicts a prepubescent boy, wearing a blue top and no pants, lying on top of a nude adult male.  The boy appears to be sleeping.  The adult male masturbates and then inserts his penis into the boy's anus.  Another video, approximately 5 minutes long, depicts an adult male performing oral sex on a prepubescent boy who appears to be approximately eight years old.  The second UC commented that the defendant had "a lot" of videos and the defendant responded that he had "1000s."[2]  Id. ¶ 15.

In September 2020, HSI received tips from the National Center for Missing and Exploited Children ("NCMEC") that the defendant had uploaded child pornography to Twitter and Facebook.  For example, on November 30, 2019, the defendant uploaded an image to Twitter depicting a minor exposing his penis.  Similarly, on December 29, 2019, the defendant uploaded child pornography to a group chat, including an image of a minor exposing his penis and masturbating.  Id. ¶¶ 16–17.

On November 10, 2020, HSI executed a search at the defendant's apartment pursuant to a warrant.  The defendant consented to being interviewed, but denied possessing child pornography.  HSI seized electronic devices belonging to the defendant, including smartphones, a laptop and an external hard drive.  Following a forensic review of the devices, HSI found approximately 673 images and 500 videos of child pornography on a Galaxy 9 smartphone and a Western Digital external hard drive.  On the smartphone, the images were in the web browser cache.  The hard drive was encrypted and could only be accessed by plugging it into the laptop. On the hard drive, child pornography was found in a folder titled, "D:\Dags\Backup\PORN."  See id. ¶¶ 18–19.

On January 22, 2021, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with six counts of distributing child pornography,

---

[2]    Pursuant to a search warrant, HSI reviewed Dropbox records for the defendant's Dropbox account, which reflect thousands of deleted digital files, many of which contain graphic file names indicative of child pornography.  See Case. No. 21-M-26; DSC000222 – DSC000224 (listing file names including "Gay Young Pics/Nude shots/Small D/7 year old" "two preteen latin boys," "5Yo Sucks Dads Dick in the Shower-Spits Out Cum," "2Little Boys Sucking Dicks").

in violation of 18 U.S.C. § 2252(a)(2), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  ECF No. 1.

On January 28, 2021, the defendant self-surrendered and was arraigned by the Honorable Cheryl L. Pollak, Chief United Magistrate Judge for the Eastern District of New York. The defendant was ordered detained pending trial and has been held at the Metropolitan Detention Center in Brooklyn, New York since that time.[3]  ECF No. 6.

On April 8, 2021, the defendant pleaded guilty to all seven counts in the indictment. ECF Nos. 20–21.

II.    Guidelines Calculation

The government and U.S. Probation concur that the defendant's applicable Guidelines calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level (§ 2G2.2(a)(2)) | | 22 |
| Plus: | Material Involved Prepubescent Minors (§ 2G2.2(b)(2)) | +2 |
| Plus: | Defendant Knowingly Engaged in Distribution (§ 2G2.2(b)(3)(F)) | +2 |
| Plus: | Portrayed Sexual Abuse or Exploitation of an Infant or Toddler (§ 2G2.2(b)(4)(B)) | +4 |
| Plus: | Use of Computer (§ 2G2.2(b)(6)) | +2 |
| Plus: | Involved 600 or More Images (§ 2G2.2(b)(7)(D)) | +5 |
| Less: | Acceptance of Responsibility | -3 |
| Total: | | 34 |

PSR ¶¶ 26–40.  Pursuant to U.S.S.G. § 3D1.2(d), the Guidelines calculation for Counts One through Seven are grouped.  Because the defendant falls within Criminal History Category I, the applicable Guidelines range is 151 to 188 months' imprisonment.  Id. ¶¶ 41–43.  Pursuant to 18 U.S.C. § 2252(b), the mandatory minimum term of imprisonment for distributing child pornography is five years.  Id. ¶ 82.

---

[3]    As of the date of this submission, the defendant has been held at the MDC for 25 months and 15 days.

III.   <u>Sentencing Law</u>

       The standards governing sentencing are well-established. In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. <u>Id.</u> at 264; <u>see also</u> <u>United States v. Kimbrough</u>, 552 U.S. 85 (2007).

       Although the Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress sought to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." <u>Booker</u>, 543 U.S. at 252; <u>see also</u> <u>United States v. Crosby</u>, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that <u>Booker/Fanfan</u> and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion. <u>Molina-Martinez v. United States</u>, 136 S. Ct. 1338, 1345–46 (2016) (internal quotation marks omitted).

       After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in 18 U.S.C. § 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." <u>United States v. Cavera</u>, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court, "in determining the particular sentence to impose," to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Guidelines; (5) the Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. <u>See</u> 18 U.S.C. § 3553(a).

       In light of <u>Booker</u>, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. <u>See</u> <u>Crosby</u>, 397 F.3d at 103. First, the Court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." <u>Id.</u> at 112; <u>see also</u> <u>United States v. Corsey</u>, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court must consider whether a departure from that Guidelines range is appropriate. <u>See</u> <u>Crosby</u>, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. <u>Id.</u> at 113.

IV.   <u>Analysis</u>

The government respectfully submits that a significant term of imprisonment within the Guidelines range is warranted by the Section 3553(a) factors, and in particular, the seriousness of the offense of conviction, the defendant's history and characteristics, and the need for specific and general deterrence.  <u>See</u> 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

There can be no dispute that the defendant's criminal conduct was of the utmost seriousness.  The defendant was an avid consumer and distributor of child pornography, with a collection of thousands of videos, several of which he shared to UCs on multiple occasions.  The videos that the defendant shared—which he professed to love and watch hundreds of times—depict horrifying scenes of the forcible rape of infants and young children, many of which are minutes long.  The defendant admitted that the graphic rape of children was precisely what he was into, stating: "I'm into bubs and toddlers getting fucked up." and "[I] Love rape nasty stuff."  The defendant deployed sophisticated means, moving his conversations away from Twitter to the more secure social media platforms of Telegram and Wickr, and he used an encrypted hard drive to store his child pornography collection.  Most troublingly, he admitted to sexually abusing his nephew, "fingering" his nephew and masturbating over him.  Given the seriousness of the crimes, a significant term of imprisonment is necessary for specific deterrence.

Beyond the enumerated specific harm caused by the defendant, the defendant's actions have even broader harmful impact.  Child pornography crimes represent the continuing victimization of the children depicted in these images, which are in essence, crime scene images.  Possession of videos and images of abuse, alone, fosters a market for more abuse.  <u>See, e.g.</u>, <u>United States v. Gouse</u>, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); <u>United States v. Miller</u>, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)).  "Child pornography harms and debases the most defenseless of our citizens.  Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet."  <u>United States v. Williams</u>, 553 U.S. 285, 307 (2008).  "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," <u>New York v. Ferber</u>, 458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, <u>Osborne v. Ohio</u>, 495 U.S. 103, 110 (1990).[4]

---

[4]     The Second Circuit has cautioned that the applicable Guidelines section, Section 2G2.2, is "fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires."  <u>United States v. Dorvee</u>, 616 F.3d 174, 184–87 (2d Cir. 2010) (explaining that the applicable enhancements concentrate all child pornography offenders at or near the statutory maximum and can make it difficult to distinguish between those who possess child pornography and the most dangerous offenders, who directly produce child pornography or engage in hands-on sexual abuse).  However, the sentence requested herein of 151 to 188 months' imprisonment is not comparable to the sentences vacated in <u>Dorvee</u> (sentence of statutory maximum of 240 months for distribution of child pornography) and <u>United States v. Jenkins</u>, 854 F.3d 181, 196 (2d Cir. 2017) (sentence of 225 months for

Accordingly, a significant sentence is warranted for general deterrence, to send a message to individuals contemplating engaging in similar conduct.

Defense counsel argues for a below Guidelines sentence of 60 months by minimizing the nature and circumstances of the offense, pointing to the defendant's troubled personal history, and emphasizing conditions at the MDC while the defendant has been in custody. Defense counsel also highlights the defendant's medical conditions, including the fact that while at the MDC, he was sent to a hospital for a urinary condition. The defendant's medical records from the MDC, enclosed herewith as Exhibit A,[5] indicate that between February 25, 2021 and March 3, 2021, the defendant was hospitalized after he experienced difficulty and pain urinating because of E. coli cultures. He was diagnosed with a urinary tract infection and prostatitis. See Ex. A (pages 18-34). On March 4, 2021, he was returned to the MDC and voiced no medical complaints. See id. at 24. During the defendant's Presentence Interview with Probation, he did not mention his hospitalization, but instead disclosed other ailments, such as being diagnosed with diabetes and high blood pressure. The government acknowledges that the defendant's health and prior history of abuse are appropriate considerations for the Court under the Section 3553(a) factors. However, neither factor warrants the significant departure requested.

In light of the of all of these factors, a sentence within the Guidelines range would reflect the seriousness of the defendant's conduct and provide adequate specific deterrence, as well as deterrence to others contemplating similar acts. See 18 U.S.C. § 3553(a)(1), (a)(2)(A), and (a)(2)(B).

---

possession of child pornography) as being substantively unreasonable. See, e.g., United States v. Escobosa, 791 F. App'x 214, 216–17 (2d Cir. 2019) (rejecting substantive reasonableness challenge to an 87-month sentence for possession of child pornography); United States v. Hagerman, 506 F. App'x 14, 17–18 (2d Cir. 2012) (upholding a 97-month sentence for receipt and possession of child pornography). Here, the defendant is guilty distributing child pornography videos, many of which depict the forcible rape of infants, on six separate occasions. Moreover, the defendant has admitted to sexually abusing his nephew by "fingering" him. Accordingly, the sentence requested herein is warranted by the Section 3553(a) factors and substantively reasonable.

[5]     The government respectfully requests leave to file the medical records under seal.

V.    <u>Conclusion</u>

For the foregoing reasons, the government respectfully submits that a sentence of 151 to 188 months' imprisonment would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/_____
Andrew D. Wang
Tara B. McGrath
Assistant U.S. Attorneys
(718) 254-6311

cc:   Clerk of the Court (WFK) (by ECF)
      Vinoo Varghese, Esq. (by ECF)
      Gregory Giblin, U.S. Probation (by email)