UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,     :
    :
    v.     :    **MEMORANDUM & ORDER**
    :    21-CR-42 (WFK)
DARREN CHARLES STEWART,     :
    :
    Defendant.     :
-----------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 8, 2022, Darren Charles Stewart ("Defendant") pled guilty to Counts One through Seven of the Indictment charging him with six counts of Distribution of Child Pornography and one count of Possession of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and 2252(a)(4)(B) and 2252(b)(2), respectively. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 156 months of incarceration, to be followed by 5 years of supervised release, forfeiture as set forth in the Preliminary Order of Forfeiture, and a $700 mandatory special assessment.

**BACKGROUND**

On January 22, 2021, the Government filed a seven-count Indictment against Darren Charles Stewart ("Defendant") charging him with six counts of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). ECF No. 1. On April 8, 2022, Defendant pled guilty to all counts. There is no plea agreement in this case.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

**DISCUSSION**

**I.    Background**

The Department of Homeland Security-Homeland Security Investigations ("DHS-HSI") began its investigation into the instant offense in early 2020. Presentence Investigation Report ("PSR"), ECF No. 22 ¶ 11.

On January 3, 2020, Defendant began conversing with an undercover agent on Wickr, an end-to-end encrypted messaging platform. *Id.* ¶ 13. During their conversations, Defendant informed the agent he desired young boys and had sexually engaged with his adolescent nephew years prior, by fingering him and masturbating over him. *Id.* Defendant also sent this undercover agent a graphic video titled, "10yo joey bathroom (2)," which depicted a prepubescent male between the ages of seven and ten years old undressing and masturbating in a bathroom. *Id.*

Between March 19 and 20, 2020, Defendant communicated with a second undercover agent via Telegram, another end-to-end encrypted messaging platform. *Id.* ¶¶ 14-15. During their conversations, Defendant stated he has "no limit [for] rough stuff", he "[l]ove[s] rape nasty stuff," and he is "into bubs and toddlers getting fucked up." *Id.* ¶ 14. Defendant also sent this undercover agent a video depicting a nude infant lying face down while an adult male penetrates the infant's anus with his penis. *Id.* Another hand is depicted in the video spreading the infant's buttocks open. *Id.*

The next day, Defendant sent this undercover agent four additional videos, which also depict child sex abuse material. *Id.* ¶ 15. One of these videos is approximately 15 minutes and 59 seconds in length. *Id.* It shows an adult male masturbating and inserting his penis into the anus of a prepubescent male child who appears to be sleeping. *Id.* When Defendant sent the agent this video, he explained it was his favorite and admitted to having "jacked off to it 300 times." *Id.* Along with this graphic and lengthy depiction of child sex abuse, Defendant shared another video, over four minutes in length, depicting an adult male performing oral sex on a prepubescent boy

who is standing over him.  *Id.*  The boy appears to be between the ages of eight and ten years old.
*Id.*  Defendant informed the agent he possessed thousands of videos such as these.  *Id.*

In September 2020, the National Center for Missing and Exploited Children ("NCMEC")
alerted DHS-HSI Defendant had uploaded images depicting child obscenity to his Twitter and
Facebook accounts.  *Id.* ¶¶ 16-17.

On November 4, 2020, the Honorable Magistrate Judge Steven M. Gold issued a search
warrant for Defendant's residence and electronic devices.  *Id.* ¶ 18.  DHS-HSI officials executed
the warrant on November 10, 2020, during which several of Defendant's electronic devices were
seized.  *Id.*  A total of 673 images and 500 videos depicting child obscenity were recovered from
Defendant's smartphone and external hard drive.  *Id.* ¶ 19.  Defendant had stored the child
pornography files on his hard drive in a folder labeled "D: \Dags Backup\PORN."  *Id.*

The Defendant surrendered to DHI-HSI agents on January 28, 2021, and was thereafter
arrested.  *Id.* ¶ 20.

## II.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case.  A
sentencing court must also consider the Sentencing Guidelines in addition to the seven factors
listed in 18 U.S.C. § 3553(a) when making a sentencing decision, which this Court has done.

The Sentencing Guidelines are merely advisory.  *United States v. Booker,* 543 U.S. 220,
264 (2005).  *See also United States v. Kimbrough,* 552 U.S. 85 (2007).  Nevertheless, the
Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal
sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  "[A] district court should begin all
sentencing proceedings by correctly calculating the applicable Guidelines range."  *Id* at 49.  In this
regard, the Guidelines provide "the framework for sentencing" and "anchor… the district court's

discretion." *Molina-Martinez v. United States,* 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis,* 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby,* 397 F.3d 103, 112 (2d Cir. 2005). It addresses each in turn.

III.    **Analysis**

   A.    **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**
       1.    **Family and Personal Background**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on February 20, 1968 in Warwick, Queensland, Australia, to the marital union of Gordon Stewart and Heather (née Watt) Stewart. PSR ¶¶ 48, 49. Defendant's parents remain married and reside in Australia. *Id.* ¶ 48. Defendant is the second of three children. *Id.* ¶ 49. Defendant is in contact with his parents and younger brother despite his incarceration.

*Id.* ¶ 50. However, Defendant's sister has stopped communicating with him since his arrest in the instant case. *Id.*

Defendant's father was in and out of jobs throughout Defendant's childhood. *Id.* ¶ 51. Defendant recalled his father moved away from the family for approximately two years when Defendant was nine years old due to employment reasons. *Id.*

Defendant recalled he was not particularly close with his parents in his youth. *Id.* He described his father as an alcoholic and reported his father regularly subjected Defendant and his brother to physical abuse, which his mother allegedly encouraged. *Id.*

Defendant also described experiencing years of sexual abuse at the hands of his uncle. *Id.* ¶ 52. Between the ages of ten and fifteen, Defendant reported his uncle repeatedly molested and anally raped Defendant. *Id.* Defendant noted his uncle was eventually charged in connection with the alleged sexual abuse of his own children. *Id.* However, Defendant's uncle was ultimately acquitted of all criminal charges. *Id.*

At the time of his uncle's trial, Defendant met and moved in with Annette Gierke. *Id.* ¶ 53. Defendant described their initial relationship as platonic. *Id.* ¶ 53. However, their relationship eventually became sexual, despite Defendant's homosexuality. *Id.* Ms. Gierke and the Defendant married in 1992 and later had two children. *Id.* Defendant recalled their marriage began to unravel in 2011, after Defendant revealed his homosexuality to his wife, and the couple ultimately divorced in 2018. *Id.* Despite their separation, both Ms. Gierke and Defendant's two children remain supportive of him. *Id.*

Defendant first traveled to the United States with a male partner not long after he revealed his sexuality to his wife. *Id.* ¶ 54. Defendant arrived in this country in 2012, and through the date of his arrival until his arrest in January 2021, Defendant resided in various parts of New York and

New Jersey. *Id.*  Prior to his arrest, Defendant had most recently been living in Astoria, Queens in New York. *Id.*

Defendant was able to remain in this country lawfully on a non-immigrant visa as an employee for the Australian government. *Id.*  However, according to Immigration and Custom Enforcement ("ICE") records, Defendant's visa lapsed on March 22, 2022. *Id.* ¶ 55.  Therefore, Defendant no longer has legal status in the United States. *Id*

### 2.   Educational and Employment History

Defendant attended Warwick State High School in Queensland, Australia from 1980 until 1984. *Id.* ¶ 72.  He withdrew from the school after completing the 11th grade and subsequently enrolled in a two-year training program with the Queensland Ambulance Service. *Id.*  He completed the program in 1986 and went on to receive an associate diploma in health science in 1996 before ultimately becoming a certified paramedic. *Id.*

In 2014, Defendant was hired by the Consulate General of Australia in New York City as a finance officer and corporate support officer. *Id.* ¶ 75.  In 2016, Defendant began his employment as an office manager for the Australian Trade and Investment Commission ("Austrade"), which was also based in New York. *Id.* ¶ 74.  However, Defendant has been unemployed since his arrest in January 2021. *Id.* ¶ 73.

### 3.   Prior Convictions

Defendant has no prior convictions.

### 4.   Medical and Mental Health

Defendant was diagnosed with type 2 diabetes in 2018. *Id.* ¶ 59.  Since he began his instant incarceration at the Metropolitan Detention Complex ("MDC") in Brooklyn, New York, Defendant has been diagnosed with high blood pressure and high cholesterol. *Id.* ¶ 60.  Defendant

has also experienced heightened anxiety and insomnia since his intake at MDC. *Id.* ¶ 63. According to Defendant's medical records from the MDC, in early 2021, Defendant was hospitalized after experiencing difficulty and pain urinating due to E. coli cultures. Gov't Memo., Exhibit A, ECF No. 32-1.

In addition, Defendant also reported feeling sadness and shame for years from the physical and sexual abuse he experienced in his youth. PSR ¶ 62. Indeed, Defendant explained it is because of this abuse that he decided to repress his sexuality until adulthood. *Id.* ¶ 62. Defendant noted he has never sought long-term therapy due to his alleged discomfort discussing himself and his feelings with others. *Id.* ¶ 62.

### 5.   <u>Substance Abuse</u>

Defendant has a history of substance use.  He reported consuming alcohol, marijuana, methamphetamine, and gamma hydroxybutyrate (a sedative known colloquially as a "date rape drug") in the past. *Id.* ¶¶ 68-70.  He further explained he limited his alcohol consumption to weekend evenings, *id.* ¶ 70, and he consumed cannabis in an edible form approximately once a month while socializing with friends. *Id.* ¶ 68.    Defendant reported he began using methamphetamine and gamma hydroxybutyrate in early 2019 in an attempt to enhance his sexual relationships, and at the suggestion of his sexual partners at the time, whom he met online. *Id.* ¶ 69. Defendant referred to this drug-use as "chemsex," a practice he ceased in March 2020 after Defendant learned one of his sexual partners had used his cellular phone to access child pornography. *Id.*

Defendant acknowledged his involvement in chemsex was potentially dangerous. *Id.*  He also noted he may benefit from substance abuse treatment to help him come to terms with this behavior. *Id.*

6.     **Nature and Circumstances of the Offense**

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

**B.     The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. Defendant's possession of child pornography and obscenity "harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). By possessing and sharing such materials depicting child obscenity, Defendant demonstrated a lack of regard for the harm these materials cause. Indeed, violations of child pornography laws, such as Defendant's in the instant offense, harm society and contribute to the re-victimization of abused children. *See United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013). "Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." *Id.* at 216; *see also United States v. Holston*, 343 F.3d 83, 88-89 (2d Cir. 2003) (acknowledging the existence of an extensive

8

national market in child pornography and recognizing the production of child pornography stimulates the demand for materials depicting child obscenity); *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (summary order) (affirming the district court's sentence of 120 months of imprisonment for, *inter alia*, distribution and possession of child pornography upon the district court's finding the defendant contributed to the creation of a market for child pornography and thereby caused children subjected to this form of abuse harm for life).

The Court's sentence also seeks to deter Defendant and others from engaging in similar criminal activity, from disregarding U.S. law, and from partaking in illicit activity.

Beyond seeking to achieve the aims of specific and general deterrence, this Court also seeks to justly punish this Defendant for the grave offense he has committed.

### C.     The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Counts One through Six of the Indictment, which charge him with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and Count Seven, which charges him with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). PSR ¶ 1.

For Counts One through Six, Defendant faces a statutory minimum term of imprisonment of five (5) years, or 60 months,  and a maximum term of imprisonment of twenty (20) years, per count pursuant to 18 U.S.C. § 2252(b)(1), and for Count Seven, Defendant faces a statutory maximum term of imprisonment of twenty (20) years, with no minimum term, pursuant to  18 U.S.C. § 2252(b)(2). On Counts One through Seven, Defendant faces a term of supervised release of five (5) years to life. 18 U.S.C. § 3583(k).

On Counts One through Six, Defendant is ineligible for probation because he must be sentenced to a term of imprisonment pursuant to 18 U.S.C. § 2252(b)(1).  18 U.S.C. § 3561(a)(3). On Count Seven, Defendant is ineligible for probation because he will be sentenced at the same time to a term of imprisonment for the same or a different offense.  18 U.S.C. § 3561(a)(3).

In addition to facing terms of imprisonment and supervised release, Defendant also faces numerous fines.  Defendant faces a maximum fine of $250,000.00 on each Count pursuant to 18 U.S.C. § 3571(b), and a mandatory special assessment of $100.00 per Count pursuant to 18 U.S.C. § 3013.  Defendant is also subject to the provisions of the Justice for Victims of Trafficking Act of 2015, 18 U.S.C. § 3014, which instructs the court to assess an amount of $5,000.00, per count, on any non-indigent person or entity convicted of an offense under 18 U.S.C. Chapters 77, 109A, 110, 117; or Section 274 of the Immigration and Nationality Act (8 U.S.C. § 1324), in addition to the assessment imposed under section 3013.  *See* 18 U.S.C. § 3014.  The Defendant is also subject to the provisions of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, which instructs the court to assess a fine (1) not more than $17,000.00 on any person convicted of an offense under 18 U.S.C. § 2252(a)(4) or § 2252A(a)(5); (2) not more than $35,000.00 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000.00 on any person convicted of a child pornography production offense, in addition to any other criminal penalty, restitution, or special assessment authorized by law, and in consideration of the factors in 18 U.S.C. § 3553(a) and 18 U.S.C. § 3572.  *See* 18 U.S.C. § 2259A.

Defendant also faces mandatory restitution in this case pursuant to 18 U.S.C. § 3663A. This Defendant must also comply with the requirements of the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901 *et seq.*  Moreover, Defendant is subject to criminal forfeiture

pursuant to 18 U.S.C. §§ 2253(a) and 2253(b), and 21 U.S.C. § 853(p), and removal from the United States.

### D.     The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]"  18 U.S.C. § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 2252 offenses is U.S.S.G. § 2G2.2.  PSR ¶ 27. Offenses covered by § 2G2.2, including Counts One through Seven of the Indictment, are to be grouped together for Guideline calculation purposes.  U.S.S.G. § 3D1.2.  The base-level offense for Counts One through Seven is 22 pursuant to Section 2G2.2(a)(2).  *Id.*

There are several specific offense characteristics which warrant upward adjustments in this case, *id.* ¶¶ 28-32:

Since the material involved prepubescent minors or minors who had not attained the age of 12, two levels are added per U.S.S.G. § 2G2.2(b)(2).  *Id.* ¶ 28.

Since the Defendant knowingly engaged in the distribution of child pornography other than that described in subdivisions (A) through (E) of U.S.S.G. § 2G2.2(b)(3), two levels are added per U.S.S.G. § 2G2.2(b)(3)(F).  *Id.* ¶ 29.

Since the Defendant possessed images and videos that depicted prepubescent children, including infants and toddlers, and the sexual penetration of minors, four levels are added per U.S.S.G. §§ 2G2.2(b)(4)(A) and (B).  *Id.* ¶ 30.

Since the instant offense involved the use of a computer for the possession and distribution of child pornography, two levels are added per U.S.S.G. § 2G2.2(b)(6).  *Id.* ¶ 31

11

Lastly, since the offense involved over 600 images and 500 videos of child pornography, five levels are added per to U.S.S.G. § 2G2(b)(7)(D). *Id.* ¶ 32.

These upward enhancements result in an adjusted offense level of 37. *Id.* ¶ 37. However, this figure is reduced by two-levels per U.S.S.G. § 3E1.1(a) due to Defendant's acceptance of responsibility. *Id.* ¶ 38. It is further reduced by an additional one-level per U.S.S.G. § 3E1.1(b) due to the fact Defendant timely notified the Government of his intent to enter a plea of guilty. *Id.* ¶ 39. Taking all adjustments into account, Defendant's total adjusted offense level is 34. *Id.* ¶ 40.

As previously stated, Defendant has no prior criminal convictions. *Id.* ¶¶ 41-42. This results in a total criminal history score of zero. *Id.* ¶ 43. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a Criminal History Category of I. *Id.* An adjusted offense level of 34, combined with a Criminal History Category of I, carries a range of imprisonment of 151 to 188 months. *Id.* ¶ 83.

All parties agree with this calculation. That is, the nature of the Defendant's offense and criminal history result in an adjusted offense level of 34, a criminal history category of I, and a Guidelines range of imprisonment of 151 to 188 months. *See* Def's Memo., ECF No. 31 at 2; Gov't Memo., ECF No. 32 at 3. However, the parties disagree as to whether the Court should impose a sentence within this recommended range.

Defense counsel and the U.S. Probation Office recommend the Court impose a sentence of 60 months, which is the statutory minimum pursuant to 18 U.S.C. § 2252(b). *See* Def.'s Memo. at 3[1]; Probation's Recommendation, ECF No. 22-1 at 1.

---

[1] It is worth noting, although it does not factor into the Court's sentencing decision, Defense Counsel disregarded this Court's individual rules when filing their sentencing submission. Despite the importance of this matter and this Court's numerous urgings, defense counsel declined to respond to the PSR and the Guidelines calculations contained therein in a timely manner, consistent with this Court's individual rules. *See* Indiv. Mot. Practices and R. of J. Kuntz, § IV(E) (2021) ("Applications regarding sentencing shall be made in writing by defense counsel at least five (5) business days prior to the date of sentencing. The Government's response, if any, shall be made in writing at least two (2) business

Defense counsel raises several arguments in support of a below-Guidelines sentence of five years. First, he cites the nature and circumstances of Defendant's offense and his personal history and characteristics. Def.'s Memo. at 7-8.  Second, he argues a five-year sentence accords with the dictates of the section 3553 factors to the extent it (1) reflects the seriousness of the offense, promotes the respect for the law, and provides just punishment for the offense, *id.* at 8-9 (referencing 18 U.S.C. § 3553(a)(2)(A)), (2) affords adequate deterrence, both specific and general, *id.* at 8-9 (referencing 18 U.S.C. § 3553(a)(2)(B)), (3) protects the public from further crimes by the Defendant, *id.* at 8-9 (referencing 18 U.S.C. § 3553(a)(2)(C)); and (4) provides this Defendant with the correctional treatment he needs while incarcerated, *id.* at 8-9 (referencing 18 U.S.C. § 3553(a)(2)(D)). The defense also argues the imposition of a sentence within the proposed Guidelines range would be too extreme in this case. He argues, rather, a sentence of 60 months is sufficient but not greater than necessary, especially considering the harsh conditions at the MDC, where Defendant has been confined for over 25 months, in addition to Defendant's deteriorating health and the purported inadequate medical treatment he has received throughout his confinement. *Id.* at 10-14; *see also* Gov't Memo. at 3, n.3 (acknowledging the duration of Defendant's ongoing period of incarceration).

Regarding the nature and circumstances of Defendant's offense and his personal history and characteristics, the defense notes the instant offense was profitless and drug fueled.  Def.'s Memo. at 7.  The defense argues the Defendant has reflected on his crimes, as well as the suffering he has caused and is deeply remorseful for his actions.  *Id.* at 7. Notably, throughout their sentencing submission, the defense maintains Defendant "[is not] a pedophile," *id.* at 3, despite his

---

days before the date of sentencing."). Rather than filing on March 10th, 2023, as he was instructed to do, Defense Counsel waited until March 15th, 2023 to submit his sentencing memorandum. *See* ECF No. 31.

admissions to law enforcement to the contrary. PSR ¶¶ 13-15 (detailing the nature of the offense, which includes, among other things, a description of Defendant admitting to having fingered his own prepubescent nephew).

The defense then discusses the positive impact Defendant has had in the lives of those around him. Def's Memo. at 8. The defense also references several letters submitted on Defendant's behalf, from Defendant's ex-wife, Annette Stewart, his ex-wife's mother, Hazel Gierke, Defendant's two children, Melleesa and Kyle, in addition to his friend, Michael Olson, and his former partner, Kang Peng. *Id.* at 8; *see also* Exhibits to Def.'s Memo., ECF No. 31-1-7. The Court acknowledges the time Defendant's loved ones have taken to write on his behalf. The Court has read each letter included in the defense's sentencing submission—including the Defendant's own statement—and notes the admiration, respect, and love expressed throughout. The Court does not overlook the positive impact the Defendant has purportedly had on others in his life before and after the instant offense. Most importantly, the Court acknowledges the regret, ownership, and remorse this Defendant has shown. Def's Ltr., ECF No. 31-7.

The Court also commends Defendant for his commitment to his family and to his work. As the defense describes, Defendant was a devoted paramedic in Australia, *id.* at 8, and he has maintained employment and volunteer positions through his imprisonment at MDC, serving in the facility's kitchen and as a "suicide companion." *Id.* at 9. Again, the Court acknowledges the Defendant's efforts and his continued desire to help others.

The Court also takes note of Defendant's troubled youth, the abuse he allegedly suffered at the hands of his father, and the sexual molestation he allegedly experienced as a victim of his uncle. *Id.* at 9. No person, including his own nephew, should endure such abuse.

The Court also acknowledges the often-deplorable conditions at the MDC. *Id.* at 10. This Defendant, as with all others incarcerated in this country, deserve to be treated with respect and decency. The Court is deeply concerned to hear the Defendant's medical ailments have not been properly treated at the MDC. The Court joins Defendant's calls to improve the conditions at the MDC, as it has done repeatedly in the past. However, the Court is not persuaded the conditions of Defendant's confinement, or the nature and circumstances of his offense and his personal history justify the significant Guidelines departure his defense—and Probation—recommend.

Probation recommends the Court impose a sentence of 60 months imprisonment on Counts One through Six, the statutory minimum, to be followed by a term of five (5) years of supervised release with special conditions. Probation's Recommendation at 1. In reaching this recommendation, Probation argues both in favor of a harsh sentence and in support of a downward departure for this Defendant.

With respect to the former, Probation references the vast collection of child pornography and obscenity in Defendant's possession, and the nature of this obscene material, which depicted young children and infants being subjected to sexual abuse. *Id.* at 4. Probation also echoes this Court's previous discussion regarding the indirect harm child pornography causes to society and to the direct and lasting harm it causes the actual victims depicted in this material. *Id.* (noting how child pornography contributes "to the revictimization of the most vulnerable members of society: children who have been videoed while being sexually abused by individuals who knew that a market exists for such images."). Probation notes this Defendant not only possessed child pornography but also sent it to an undercover agent, making this Defendant relatively more culpable for his offensive conduct than other similarly situated child pornography defendants who did not further disseminate the obscene materials at issue in this case. *Id.* at 4-5.

Probation makes several arguments in favor of a more lenient sentence than that reflected in the proposed Guidelines range. In doing so, Probation, as with defense counsel, references the Second Circuit's ruling in *United States v. Dorvee,* 616 F .3d 174 (2d Cir. 2010) in which the court found Guideline 2G2.2, the applicable provision here, to be "fundamentally different" from other guidelines. *Dorvee,* 616 F.3d at 184. *See* Probation's Recommendation at 4. Probation notes this provision calls for the application of various specific offense characteristics enhancements, and that the application of these enhancements tends to lead to a Guidelines range at or near the statutory maximum. *Id.* Probation also cautions the Court that this Guidelines provision makes it difficult to distinguish among defendants convicted of child pornography offenses. *Id.* (referencing *Dorvee,* 616 F .3d at 184 (warning "unless applied with great care [Guideline 2G2.2], can lead to unreasonable sentences" that are inconsistent with the mandates of 18 U.S.C. § 3553)).

Probation also urges the Court to consider Defendant's difficult childhood and his otherwise law-abiding and productive life. *Id.* at 5. Lastly, Probation argues a downward departure is warranted based on its belief Defendant's mental health needs are not being properly addressed under the current conditions of Defendant's incarceration at the MDC. *Id.*

While the Court certainly appreciates the arguments put forth by Probation, in addition to those by the defense—which this Court has previously discussed—the Court cannot overlook the gravity of the instant offense to the extent these parties would like.

As the Government notes, this Defendant was an avid consumer and distributor of child pornography, with a collection of thousands of obscene videos and images—which he shared with undercover agents on multiple occasions. Gov't Memo at 5. This Defendant confessed to having watched these videos hundreds of times; he admitted he preferred depictions of the graphic rape of children; he deployed sophisticated means to steer conversations from unsecured social media

sites to more encrypted platforms; and he also admitted to one agent to having sexually abused his own nephew. *Id.* Defendant's conduct—the nature and circumstances surrounding his offense— are profoundly disturbing. The Court's sentence reflects this.

The Court also heeds the Government's position that child pornography crimes, including those this Defendant has committed, broadly impact our society. *Id.* As the Court previously explained, this Defendant's crimes were not victimless. *See Gouse*, 468 F. App'x at 78 ("[The defendant's] crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life.") (internal quotation marks omitted)). Indeed, child pornography crimes contribute to the continuing victimization of the children depicted in these images. *See United States v. Miller*, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse.") (internal quotation marks omitted)); *Williams*, 553 U.S. at 307 ("Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet."). Preventing child exploitation and abuse is of the outmost importance to our society. The law is crystal clear: "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance[.]" *Williams*, 553 U.S. at 307; *see also Osborne v. Ohio*, 495 U.S. 103, 110 (1990); *New York v. Ferber*, 458 U.S. 747 (1982).

### E.    Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Although not addressed by either party, the Court considers the Sentencing Commission's statement contained in U.S.S.G. § 5D1.2. In which, the Commission recommends courts impose the statutory maximum term of supervised release if the conviction is a sex offense. U.S.S.G. § 5D1.2(b)(2). *See* U.S.S.G. § 5D1.2 cmt. 1 (defining a "sex offense" to include offenses perpetrated under Chapter 110 of Title 18 of the United States Code). The Court does not give controlling weight to this statement, but it does consider it, as it is required to do as matter of law.

### F.     The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.     The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is required in this case. 18 U.S.C. § 3663. However, it is presently indeterminable as the Government has yet to identify Defendant's victims. PSR ¶ 95. Therefore, the Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the Defendant's victims.

## IV.   CONCLUSION

A sentence of 156 months of incarceration, to be followed by 5 years of supervised release with special conditions, forfeiture as set forth in the Preliminary Order of Forfeiture, and a $700

mandatory special assessment on each count is appropriate and comports with the dictates of §
3553. This sentence is consistent with, and is sufficient but no greater than necessary to
accomplish, the purposes of § 3553(a).

The Court expressly adopts the factual findings of the Presentence Investigation Report
and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent
with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 22, 2023
       Brooklyn, New York

19