

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPL:TBM
F. #2020R00871

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 5, 2025

By ECF

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Darren Charles Stewart
              Criminal Docket No. 21-42 (WFK)

Dear Judge Kuntz:

      The government respectfully submits this letter in advance of the defendant Darren Charles Stewart's resentencing, scheduled for August 12, 2025, at 12:00 p.m. On April 8, 2022, the defendant pleaded guilty to six counts of distribution of child pornography, in violation of Title 18, United States Code, Section 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On March 22, 2023, the Court sentenced the defendant to 156 months' imprisonment. On July 24, 2024, the Second Circuit reversed and remanded for consideration of whether the sentence imposed created unwarranted sentencing disparities. For the reasons stated below, the government respectfully submits that a sentence at the low-end of the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 151 to 188 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing, including to avoid unwarranted sentencing disparities.

      I.    Factual Background

      In January and March 2020, the defendant distributed videos depicting the graphic sexual abuse of prepubescent boys to undercover agents ("UC-1," "UC-2," and together the "UCs") of the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), using the social media platforms X (then Twitter), Wickr, and Telegram. See Presentence Investigation Report dated July 19, 2022 ("PSR") ¶¶ 11-15.

      In January 2020, the defendant steered a conversation with UC-1 from Twitter to Wickr, a platform that facilitated end-to-end encrypted messaging. Id. at ¶¶ 11-12. The following day, the defendant informed UC-1 that he "love[s] little boys." Id. at ¶ 13. When UC-1 asked the defendant if he had any "access to or experience with children," meaning the direct sexual exploitation of children, the defendant responded: "No access…some fingering my nephew and

Jacking off over him…years [a]go[.]" Id.[1] In the same series of messages, the defendant further reported his interest in incest, and specifically: "Love incest .. daddies fuckinh [sic] their sons.." Screenshots of those conversations are copied below, with the defendant's messages under the username "petepete78" and UC-1's under the username "taboo619."

 

DCS000004-5.

The defendant then sent UC-1 an approximately seven-minute video titled "10yo joey bathroom(2)," depicting a prepubescent boy undressing and masturbating. PSR ¶ 13.

In March 2020, the defendant directed a conversation with UC-2 from Twitter to Telegram, another platform for encrypted messaging. Id. ¶¶ 11, 14. When asked about the taboos in which he was interested, the defendant disclosed that he was interested in "0-10 no limit rough stuff," and stated, "I'm into bubs and toddlers getting fucked up." Id. at ¶ 14. The defendant sent UC-2 a video with the message, "Love rape nasty stuff." Id. A screenshot of that conversation is

---

[1] Ellipses and typographical errors in quoted language of the defendant and UCs are original unless otherwise noted. As reflected in the PSR, the defendant had two siblings who were "lifelong residents of Australia," one of whom had "three adult children (ages 26 to 30)," and another who had "a 17-year-old daughter and a 15-year-old son." PSR at ¶ 49. As further reflected in the PSR, "HSI officials were not able to confirm that the defendant actually engaged in any inappropriate touching of his nephew or any other minors." Id. ¶ 13. None of Stewart's siblings, nieces, or nephews submitted letters to the Court, either in connection with the defendant's sentencing or resentencing.

2

copied below, with the defendant's messages appearing under the username "Pete" and UC-2's under the username "PervyWickr Taboo."



DCS000012.  Consistent with the particular type of abuse the defendant reported to favor, the video he shared depicted an infant lying face down while an adult male penetrated the infant's anus with his penis.  Id. ¶ 14.  A second adult facilitated the abuse, by using his or her hands to spread the infant's buttocks open.  Id.

The next day, the defendant sent UC-2 four more videos of child pornography. Id. at ¶ 15. Among the videos was an approximately 16-minute video, which the defendant shared with the messages, "Love that boy…My fave video," and, "It's my fave, jacked off to it 300 times." Id. (ellipses in original). A screenshots of that conversation is copied below, with the defendant's messages appearing to the left in white, and UC-2's messages appearing to the right in green.



DSC000014. What the defendant reported to be his "fave video" depicted an adult male masturbating over a prepubescent boy and anally raping the boy while the boy appeared to be sleeping or otherwise unconscious. See PSR ¶ 15. Another video the defendant shared was approximately 5 minutes long and depicted an adult male performing oral sex on a prepubescent boy. Id. The defendant disclosed to UC-2 that he had "1000s" of videos of child pornography. Id.

In September 2020, HSI received tips from the National Center for Missing and Exploited Children that the defendant had uploaded child pornography to Twitter and Facebook. For example, on November 30, 2019, the defendant uploaded an image to Twitter depicting a minor exposing his penis. Similarly, on December 29, 2019, the defendant uploaded child pornography to a Facebook group chat, including an image of a minor exposing his penis and masturbating. Id. ¶¶ 16–17.

In November 2020, the defendant's residence was searched pursuant to a warrant. Id. at ¶ 18. Agents seized, among other things, a smartphone and hard drive. Id.. A forensic review of the devices revealed 673 images and 500 videos of child pornography. Id. at ¶ 19. On the smartphone, the images were in the web browser cache. On the hard drive, the child pornography was saved in a folder titled "Dags Backup\PORN." Id. The hard drive was encrypted and could only be accessed by plugging it into the defendant's laptop.

Likewise, pursuant to a search warrant, HSI reviewed records for the defendant's Dropbox account, which reflect thousands of deleted digital files, many of which contain graphic file names indicative of child pornography. For example, files titled "5Yo Sucks Dads Dick in the Shower-Spits Out Cum- Pthc Gay Boy Pedo" and "2Little Boys Sucking Dicks" were added to the defendant's Dropbox account on October 14, 2015. Similarly, a file titled, "gay ninos filipinos de 10 anos oral y penetracion anal"—which translates to gay Filipino boys 10 years old oral and anal penetration—was added to the defendant's Dropbox account on October 12, 2015. See DSC000222-24.

II. Procedural Background

a. Charges, Arrest, and Guilty Plea

On January 22, 2021, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with six counts of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). ECF No. 1.

On January 28, 2021, the defendant self-surrendered and was arraigned by the Honorable Cheryl L. Pollak, United Magistrate Judge for the Eastern District of New York. The defendant was ordered detained pending trial. ECF No. 6.

On April 8, 2021, the defendant pleaded guilty to all seven counts in the indictment. ECF Nos. 20-21.

b. Defense Expert

On March 15, 2023, the defendant filed a sentencing memorandum requesting the mandatory minimum sentence, citing in support a defense expert's conclusion that he was not a pedophile and had a low risk of recidivism. ECF No. 31-8 ("Krueger Report"). Notably, the defense expert based his conclusions on two telephone conversations with the defendant, the indictment, and the plea agreement. Id. at 1-2. The telephone conversations took place while the

5

defendant was in custody and while other inmates could hear him. Id. at 1. The expert was not provided with the defendant's chats with the UCs or the underlying child pornography, nor does he appear to have been informed of their nature.

During the telephone interviews, the defendant claimed that he only viewed child pornography during a ninth-month period, exclusively in the context of drug-fueled sex parties, and was not sexually aroused by minors, but rather was sexually aroused by "bearded men with beer bellies." Id. at 4-5, 8, 11. He denied pedophilia and claimed to be 100% in control of his sexual urges and behavior. Id. at 7-8. The expert administered four tests to assess the defendant's deviant and non-deviant sexual behavior, two of which involved the defendant administering his own score. Id. at 8-9. The expert also administered five tests to assess the defendant's risk of recidivism, but acknowledged that those tests were not approved for offenders like the defendant who had not yet been convicted and thus could only provide a "'ballpark' idea of what his risk of repeat behavior might be." Id. at 10.

Based on the defendant's self-serving statements and the bare recital of the charges in the indictment, the expert concluded, "I do not think that Mr. Stewart makes criteria for pedophilia or any other paraphilic disorder, because he denies being sexually aroused to such images and because his arousal was always associated with substantial drug use. . . . There is no indication that Mr. Stwart has ever abused or attempted to abuse a minor or that he was involved with child pornography prior to these sex parties." Id. at 12.

In connection with resentencing, the defendant again asks the Court to credit his expert's findings. See ECF No. 57 ("Def. Mem."); ECF No. 57-2 (Kruger Reporter). Because the expert was deprived of virtually all relevant information, as discussed further below, the Court should not credit his findings.

c. Sentencing

On March 17, 2023, the defendant was sentenced to 156 months' imprisonment. See Sentencing Tr. at 59. At sentencing, the defendant repeated the claims he made to his expert, "I did only engage in this because of deep depression and heavy drug use." Id. at 15. Defense counsel did the same: "During this period, he was on meth. He wasn't smoking weed, you know. And the conversations . . . there were things he just doesn't remember." Id. at 34. However, the government argued that the conduct was not aberrational and drug-fueled, but reflective of an avid collector and distributor. Id. at 31-32. Even more troubling than the defendant's minimizations, the defendant reported to the UCs that he received particular sexual gratification from videos depicting the violent sexual abuse of infants and toddlers, which was consistent with the videos he then shared, and he reported to have sexually abused his nephew. See id.

During its analysis, the Court expressed skepticism at the defendant's assertion that he was not a pedophile, considering "his admissions to law enforcement to the contrary," including his admission of sexually abusing his nephew. Id. at 52. The Court reasoned that a Guidelines sentence was appropriate because the defendant was an avid consumer of child pornography, "confessed to having watched these videos hundreds of times," "admitted he preferred depictions of the graphic rape of children," "deployed sophisticated means to steer conversations from

6

unsecured social media and social media sites to more encrypted platforms," and "admitted to one agent to having sexually abused his nephew." Id. at 57. The Court further noted that it had considered the 18 U.S.C. §3553(a) factors, including the need to avoid unwarranted sentencing disparities, and that its sentence "avoids unwarranted sentencing disparities." Id. at 59. At sentencing, there was no express discussion of the sentencing statistics for similarly situated defendants.

        d.      Appeal

The defendant appealed on numerous grounds including, as relevant here, assertions that (1) his sentence was procedurally unreasonable because the court did not consider the need to avoid unwarranted sentencing disparities under 18 U.S.C. §3553(a)(6); (2) his sentence was substantially unreasonable because the court relied on his admission that he sexually abused his nephew, to which the defendant made no objection or denial at the time; (3) his Guidelines sentence was substantively unreasonable; and (4) his counsel was ineffective for failing to argue that the defendant's admission of sexually abusing his nephew was simply boasting and not true.

By summary order, the Second Circuit held "that the district court plainly erred by failing to provide an explanation as to why it concluded that the 156-month sentence for Stewart's offenses, rather than a lower sentence, was necessary to avoid unwarranted sentencing disparities." United States v. Stewart, 2024 WL 3517853, at *1 (2d Cir. Jul. 24, 2024). The Circuit noted that there was "no statistical information in the sentencing record as to the average sentence nationwide for defendants similarly situated to Stewart," and that it was "far from clear that the district court would impose the same sentence on remand if Stewart were to demonstrate that his 156-month sentence exceeds the national average for similarly situated offenders by five years or more." Id. at *2-3. Because the Circuit remanded for resentencing, it did not address the defendant's remaining challenges concerning sentencing. Id. at *3.[2]

   III.    Guidelines Calculation

The applicable Guidelines calculation is the same that applied at the time of the defendant's sentencing, which the defendant did not dispute. See PSR ¶¶ 26-40; Sentencing Tr. at 11; ECF No. 31 at 6.

        Base Offense Level (§ 2G2.2(a)(2))                                        22

        Plus:    Material Involved Prepubescent Minors
                    (§ 2G2.2(b)(2))                                                              +2

---

[2] The defendant thus misreads the Circuit's summary order when he claims, "The Second Circuit, in its order for resentencing found that defense counsel 'rendered ineffectively assistance of counsel 'by failing to object to the inclusion of the unsubstantiated statement on the PSR found in paragraph thirteen." ECF No. 57 at 7 (errors in original). To the contrary, the Circuit declined to reach this argument: "because we vacate and remand for resentencing, we need not address this separate procedural challenge or the alleged ineffective assistance of counsel claim arising therefrom." Stewart, 2024 WL 317853, at *3.

7

| | | |
|---|---|---:|
| Plus: | Defendant Knowingly Engaged in Distribution (§ 2G2.2(b)(3)(F)) | +2 |
| Plus: | Portrayed Sexual Abuse or Exploitation of an Infant or Toddler (§ 2G2.2(b)(4)(B)) | +4 |
| Plus: | Use of Computer (§ 2G2.2(b)(6)) | +2 |
| Plus: | Involved 600 or More Images (§ 2G2.2(b)(7)(D)) | +5 |
| Less: | Acceptance of Responsibility | -3 |
| | Total: | <u>34</u> |

Pursuant to U.S.S.G. § 3D1.2(d), the Guidelines calculation for Counts One through Seven are grouped. Because the defendant falls within Criminal History Category I, the applicable Guidelines range is 151 to 188 months' imprisonment. PSR ¶¶ 41–43. Pursuant to 18 U.S.C. § 2252(b), the mandatory minimum term of imprisonment for distributing child pornography is five years. Id. ¶ 82.

IV. <u>Sentencing Law</u>

The standards governing sentencing are well-established. In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. Id. at 264; <u>see</u> <u>also</u> <u>United States v. Kimbrough</u>, 552 U.S. 85 (2007).

Although the Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress sought to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." <u>Booker</u>, 543 U.S. at 252; <u>see</u> <u>also</u> <u>United States v. Crosby</u>, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that <u>Booker/Fanfan</u> and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion. <u>Molina-Martinez v. United States</u>, 136 S. Ct. 1338, 1345–46 (2016) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in 18 U.S.C. § 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of

8

the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court, "in determining the particular sentence to impose," to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Guidelines; (5) the Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

In light of Booker, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. See Crosby, 397 F.3d at 103. First, the Court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Id. at 112; see also United States v. Corsey, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court must consider whether a departure from that Guidelines range is appropriate. See Crosby, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. Id. at 113.

In United States v. Dorvee, the Second Circuit cautioned that the applicable Guidelines section here, Section 2G2.2, is "fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." 616 F.3d 174, 184-87 (2d Cir. 2010) (explaining that the applicable enhancements concentrate all child pornography offenders at or near the statutory maximum and can make it difficult to distinguish between those who possess child pornography and the most dangerous offenders, who directly produce child pornography or engage in hands-on sexual abuse). The Second Circuit reiterated that concern in United States v. Tutty, noting that "the eccentric child pornography Guidelines, with their highly unusual provenance, can easily generate unreasonable results if they are not carefully applied." 612 F.3d 128 (2d Cir. 2010). Compare United States v. Jenkins, 854 F.3d 181, 190-91 (2d Cir. 2017) (finding substantively unreasonable concurrent sentences of 120 months and 225 months for possessing and transporting child pornography, respectively, where, inter alia, there was no allegation the defendant "was involved in the production or distribution of child pornography or that he was involved in any child pornography community" or that he engaged in sexually dangerous behavior, and he had simply transported his own collection of child pornography across state lines); Dorvee, 616 F.3d at 176 (same with 233 month sentence for distributing child pornography); Tutty, 612 F.3d at 129 (same with 168 month sentence for receiving child pornography); with United States v. Bullock, --- F.4th ---, 2025 WL 2423493, at *3, 7-8 (2d Cir. Aug. 22, 2025) (affirming Guidelines sentence of 97 months' imprisonment for possession of child pornography, where district court criticized defendant's allocution—that he inadvertently found child pornography while looking for legal images of nude children—and district court "was entitled to rely on [the defendant's] rationalizations . . . in concluding that he lacked remorse and posed a danger to the public"); United States v. Darrah, 132

9

F.4th 643, 653 (2d Cir. 2025) (affirming sentence of 106 months for distribution of child pornography, where Guidelines range was 151 to 188 months, and where district court had balanced mitigating and aggravating circumstances); United States v. Love, 2025 WL 1077176, at *2 (2d Cir. Apr. 8, 2025) (affirming sentence of 121 months for receipt of child pornography, where Guidelines range was "151 to 181 months," and where district court indicated it had considered the mitigating circumstances and the parties' arguments).

V.   Analysis

The government respectfully submits that a sentence at the low-end of the Guideline range of 151 to 188 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing, including the need to avoid unwarranted sentencing disparities.

a.   The Nature, Circumstances, and Seriousness of the Offenses

The requested sentence is warranted to reflect the nature and circumstances of the offenses and the seriousness of the offenses. See 18 U.S.C. §3553(a)(1), (a)(2)(A).

There can be no dispute that the defendant's criminal conduct was of the utmost seriousness. The defendant was an avid consumer and distributor of child pornography, with a collection of thousands of videos, several of which he shared with UCs on multiple occasions. The videos that the defendant shared—which he professed to love and watch hundreds of times—depict horrifying scenes of the forcible rape of infants and young children, many of which are minutes long. The defendant deployed sophisticated means, moving his conversations away from Twitter to the more secure social media platforms of Telegram and Wickr, and he used an encrypted hard drive to store his child pornography collection.

Moreover, it is incontrovertible that when asked if he had access to young children, the defendant wrote to UC-1, "No access…some fingering my nephew and Jacking off over him…years [a]go[.]" PSR ¶ 13. A screenshot of that conversation was furnished to the defendant in discovery and is copied above. Accordingly, that statement was and is appropriately included in the PSR. For the first time on appeal, and now again on resentencing, the defendant claims that the Court should not have read his admission for its plain meaning—that he in fact sexually abused his nephew. Yet, either the defendant sexually abused his nephew or boasted about so doing. Indeed, the defendant admitted that he "love[s] little boys," "love[s] incest.. daddies fuckinh [sic] their sons," and maintained on a Dropbox account videos consistent with child pornography depicting incest, including one with the file name, "5Yo Sucks Dads Dick in the Shower-Spits Out Cum- Pthc Gay Boy Pedo." Additionally, the video the defendant reported to be his "fave" depicted analogous conduct to that the defendant described with his nephew—an adult male masturbating over an unconscious prepubescent boy, among other things. Accordingly, the defendant's admission to UC-1 demonstrates, at a minimum, his fantasizing and boasting about being a hands-on abuser—from which the Court can reasonably conclude that the defendant is more likely to become a hands-on abuser—and thus supports the requested sentence.

The seriousness of the offense is reflected in the Guidelines calculation. The applicability of the enhancements easily and appropriately correlate to the aggravating circumstances of this defendant's conduct. For example, the defendant received a two-point

enhancement for engaging in distribution. Unlike cases involving file sharing platforms, where a defendant can make his files available for download to third parties but is not individually selecting the videos to send, here, the defendant personally selected which videos he shared with the UCs and offered commentary demonstrating his familiarity with those videos. Additionally, the defendant received a two-point enhancement for material involving prepubescent minors, because all of the videos the defendant shared involved prepubescent minors. The defendant also received a four-point enhancement for material portraying the sexual abuse of an infant or toddler. Specifically, he shared a video that depicted an infant lying face down being anally raped with the assistance of another adult. See Tutty, 612 F.3d at 129 (noting that 4-level enhancement applied based on an image of a five-year old being sodomized, even absent affirmative evidence that the defendant had seen it); Dorvee, 616 F.3d at 180 (noting that 4-level enhancement applied where defendant possessed such images, but had not distributed them). The defendant offered further commentary demonstrating his preference for these videos, including his claim to like "0-10 no limit rough stuff," "love rape nasty stuff," and "I'm into bubs and toddlers getting fucked up." Further, the defendant received a five-point enhancement for possessing 600 or more images, which underrepresents the size of his collection. Because each video constitutes 75 images for purposes of the Guidelines, the defendant's collection comprised more than 38,000 images. See U.S.S.G. §2G2.2, cmt. 6(B)(ii) (providing conversion rate for videos to images and noting). The Guidelines further provide, "If the length of the visual depiction is substantially more than 5 minutes, an upward departure may be warranted." Id. Here, the defendant's "fave video" was more than three times that length. Finally, the defendant received a two-level enhancement for the use of a computer. He did not simply share child pornography on a computer. Rather, he steered the online conversations with the UCs from unencrypted to encrypted platforms; he used an encrypted hard drive; and he stored and distributed child pornography across multiple platforms, including Dropbox, Facebook, Twitter, and Wickr.

Thus, the nature and circumstances of the offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to provide just punishment all warrant the requested sentence.

      b.    <u>The History and Characteristics of the Defendant, and the Need for Specific Deterrence, Just Punishment, and to Protect the Public</u>

The requested sentence is warranted by the defendant's history and characteristics, the need for specific deterrence, the need for just punishment, and the need to protect the public from the defendant. See 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C).

Relying on the Krueger Report, defense counsel claims, "an expert in this area . . . concluded that Mr. Stewart *was not a pedophile* and moreover was unlikely to recidivate," which assertion, counsel claims confusingly, went "unchallenged." Def. Mem. at 7. Of course, the government has always maintained that the defendant has a sexual preference for young children, which is amply supported by the evidence and has fueled these crimes. See, e.g., ECF No. 33 (gov't sentencing mem.); Sentencing Tr. at 31 (rebutting defense argument that the defendant's conduct was drug-fueled and aberrational).

The defendant's own words and actions demonstrate that he has had a years-long interest in child pornography. Child pornography was downloaded to his Dropbox account as early as 2015. In 2019, he uploaded child pornography to Twitter and Facebook. Then, in 2020,

11

he shared videos of child pornography with two UCs. During conversations with the UCs, the defendant described the particular type of child pornography in which he was interested—"little boys," "incest," "no limit rough stuff," "bubs and toddlers getting fucked up," and "rape nasty stuff." The videos he shared were consistent with those description. For example, the defendant shared an almost 16-minute video that depicted an unconscious infant being sodomized. The defendant claimed, "Love that boy," "My fave video," "It's my fave, jacked off to it 300 times." Moreover, the defendant confessed to or boasted about sexually abusing his own nephew.

Incredulously, the defendant asks the Court to rely on his expert's conclusion that he is not a pedophile, only viewed child pornography in the context of drug-fueled group sex during a nine-month period, and is a low risk of recidivism, when that expert was deprived of any information about the facts of this case beyond the bare recital of the charges in the indictment. The expert was not provided with the UC chats or the child pornography itself, including evidence that the defendant had been collecting child pornography for years. Instead, the expert was reliant on the defendant's self-serving statements—made at a time the defendant was highly incentivized to lie and while the defendant was within earshot of other inmates. As can be seen, however, none of the UC chats are consistent with having occurred while the defendant was in the midst of a drug-fueled sex party. Instead, the defendant was sharing individual videos, sometimes over several days. See PSR ¶¶ 14-15. Additionally, the defendant's admissions to being interested in particular types of child pornography, and having watched certain videos hundred of times, is irreconcilable with his patently false claim to only be watching those videos during group sex parties. Finally, the defendant's history of collecting and distributing child pornography across multiple platforms, as early as 2015, belies any suggestion that this was an aberrational period in his life. Accordingly, the expert's conclusions are highly unreliable and should not be credited.

To the contrary, supporting the requested sentence are the defendant's patently false claims to this Court and his own expert that he only engaged in the conduct "because of deep depression and heavy drug use," which was repeated by his lawyer. See Sentencing Tr. at 15, 34; Krueger Report at 11 ("He said that hew as not aroused to images of minors even when he was viewing such images as he was involved in group sex with other adult males."). The defendant's unwillingness to take accountability for his own actions—instead blaming them on third parties and narcotics, and falsely claiming that the activity was short lived—demonstrates his lack of remorse and the need for specific deterrence.

c. The Need for General Deterrence and to Promote Respect for the Law

Moreover, the requested sentence is warranted by the need for general deterrence and to promote respect for the law. See 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B).

Beyond the enumerated specific harm caused by the defendant, the defendant's actions have even broader harmful impact. Child pornography crimes represent the continuing victimization of the children depicted in these images, which are in essence, crime scene images. Possession of videos and images of abuse, alone, fosters a market for more abuse. See, e.g., United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession

12

of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). "Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." United States v. Williams, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," New York v. Ferber, 458 U.S. 747 (1982), and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, Osborne v. Ohio, 495 U.S. 103, 110 (1990).

Since 2020, child pornography offenses have increased by 34.4%, demonstrating the heightened need for general deterrence. See U.S. Sentencing Commission, *Child Pornography* (enclosed as Exhibit A), available at https://www.ussc.gov/research/quick-facts/child-pornography. Accordingly, a significant sentence is warranted for general deterrence, to send a message to individuals contemplating engaging in similar conduct.

        d.        <u>The Need to Avoid Unwarranted Sentencing Disparities Among Similarly Situated Defendants</u>

Finally, the requested sentence will not create unwarranted sentencing disparities among similarly situated defendants. See 18 U.S.C. § 3553(a)(6).

Statistics for 2024 demonstrate that nationally, defendants convicted of child pornography offenses received an average sentence of 116 months and a median sentence of 97 months. See U.S. Sentencing Commission Statistical Information Packet FY 2024 (enclosed as Exhibit B) at Table 7, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/2c24.pdf. Of that population, 37.8% received a sentence within the Guidelines range, and 56.9% were sentenced to a term that reflected a variance from the Guidelines. See id. at Table 10. Notably, those statistics include offenders less culpable than the defendant, including individuals who possessed child pornography, but did not distribute it.

Similarly, statistics for fiscal years 2020 to 2024 demonstrate that defendants whose Guidelines were calculated under U.S.S.G. § 2G2.2, with a Criminal History Category of I and a total offense level of 34, received an average sentence of 109 months' imprisonment and a median sentence of 97 months' imprisonment.[3] See U.S. Sentencing Commission Judiciary Sentencing Information, available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (filtered to Guideline §

---

[3] The defendant wrongly states that those statistics do "not distinguish between production and non-production defendants." Def. Mem. at 6 n.4. Whereas the applicable Guideline for defendants convicted of possession, receipt, or distribution—like the defendant—is U.S.S.G. § 2G2.2, the applicable Guideline for defendants convicted of production is U.S.S.G. §2G2.1. Additionally, the defendant cites numerous cases for <u>possession</u> of child pornography, in which a probationary sentence or short of term imprisonment was imposed. See Def. Resentencing Mem. at 5 n.3. Those cases are inapposite for the obvious reason that the defendant here has been convicted of six counts of distribution, which carry a mandatory term of 60 months' imprisonment.

13

2G2.2, offense level 34, CHC I). Of that population, 20% of defendants received a sentence within the Guidelines range and 77% received a downward departure or variance. Id.

Finally, the U.S. Sentencing Commission's statistics for child pornography offenses in 2024 demonstrate that defendants convicted of trafficking child pornography—like the defendant—for whom a five-year mandatory minimum was applicable, were on average sentenced to 138 months' imprisonment. See Exhibit A. By contrast, defendants convicted of receiving child pornography, for whom a five-year mandatory was applicable, were on average sentenced to 87 months' imprisonment, and defendants convicted of possessing child pornography with no mandatory minimum were on average sentenced to 65 months' imprisonment. Additionally, 37.7% of child pornography sentences were within the Guidelines range, 53.2% reflected downward variances, and 3.7% reflected upward variances.

Of course, the statistics do not offer an individualized assessment of the defendants who comprise them, including those at the upper and lower ends. Thus, while helpful in showing broad ranges, they must be assessed in totality of the Section 3553(a) factors. Here, given that each of the sentencing enhancements easily and appropriately reflects aggravating circumstances of the defendant's conduct, a Guideline sentence remains appropriate. That is particularly true where certain aggravating circumstances are not reflected in the Guideline calculation, including the defendant's false statements to this Court blaming his conduct on others and falsely claiming that it was short lived. See Bullock, --- F.4th ---, 2025 WL 2423493, at *3, 7-8 (affirming Guidelines sentence for possession of child pornography, and finding district court "was entitled to rely on [the defendant's] rationalizations . . . in concluding that he lacked remorse and posed a danger to the public").

In sum, because there are a significant number of aggravating circumstances here, as discussed above, there is no indication that this defendant is similarly situated to those that received a downward departure or variance. Accordingly, a Guideline sentence here will not create unwarranted sentencing disparities among similarly situated defendants.

VI. Conclusion

For the foregoing reasons, the government respectfully submits that a sentence within the low-end of the Guideline range of 151 to 188 months' imprisonment would be sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/
Tara B. McGrath
Assistant U.S. Attorney
(718) 254-6454

cc: Clerk of the Court (WFK) (by ECF)
    Counsel of Record (by ECF)
    U.S. Probation (by email)