UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

DARREN CHARLES STEWART,

               Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
21-CR-42 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On April 8, 2022, Darren Charles Stewart ("Defendant") pled guilty to all counts of a seven-count Indictment charging him with six counts of Distribution of Child Pornography and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252. On March 22, 2023, this Court sentenced Defendant to 156 months' imprisonment, to be followed by five (5) years' supervised release; forfeiture as set forth in the Order of Forfeiture; and a $700.00 mandatory special assessment. On July 24, 2024, the United States Court of Appeals for the Second Circuit vacated the Court's judgment and remanded the case for resentencing. The Court now resentences Defendant and provides a complete statement of reasons under 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 120 months' imprisonment, to be followed by five (5) years' supervised release; forfeiture as set forth in the Order of Forfeiture; and the $700.00 mandatory special assessment.

## I.    BACKGROUND

On January 3, 2020, Defendant began conversing with an undercover agent on Wickr, an end-to-end encrypted messaging platform. Presentence Investigation Report ¶ 13 ("PSR"), ECF No. 22. During their conversations, Defendant informed the agent he "love[d] little boys" and had sexually molested his adolescent nephew years prior by fingering him and masturbating over him. *Id.* Defendant also sent this undercover agent a graphic video titled "10yo joey bathroom(2)," which depicted a prepubescent male between the ages of seven and ten undressing and masturbating in a bathroom. *Id.*

On March 19 and 20, 2020, Defendant communicated with a second undercover agent via Telegram, another end-to-end encrypted messaging platform. *Id.* ¶¶ 14–15. During their conversations, Defendant stated he has "no limit [for] rough stuff," he "[l]ove[s] rape nasty stuff,"

1

and he is "into bubs and toddlers getting fucked up." *Id.* ¶ 14. Defendant also sent this undercover agent a video depicting a nude infant lying face down while an adult male penetrates the infant's anus with his penis. *Id.* Another hand is depicted in the video spreading open the infant's buttocks. *Id.*

The next day, Defendant sent this undercover agent four more videos featuring child sex abuse material. *Id.* ¶ 15. One of these videos, approximately sixteen minutes in length, showed an adult male masturbating and inserting his penis into the anus of a prepubescent male child who appears to be sleeping. *Id.* Defendant told the agent this video was his favorite and boasted about having "jacked off to it 300 times." *Id.* Another video, over four minutes in length, depicted an adult male performing oral sex on a prepubescent boy standing over him. *Id.* The boy appears to be between eight and ten years old. *Id.* Defendant informed the agent he possessed thousands more videos like these. *Id.*

In September 2020, the National Center for Missing and Exploited Children ("NCMEC") alerted law enforcement Defendant had uploaded child pornography to his Twitter and Facebook accounts. *Id.* ¶¶ 16–17.

On November 4, 2020, Magistrate Judge Steven M. Gold issued a search warrant for Defendant's residence and electronic devices. *Id.* ¶ 18. Law enforcement officials recovered a total of 673 images and 500 videos of child obscenity from Defendant's smartphone and external hard drive. *Id.* ¶ 19. On January 28, 2021, Defendant was arrested. *Id.* ¶ 20.

## II.     LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider six different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

### III.   ANALYSIS

**A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

The first Section 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

   *1.   Family and Personal Background*

Defendant was born on February 20, 1968, in Warwick, Queensland, Australia. PSR ¶¶ 48–49. Defendant described Warwick as a "very white, very racist, and very homophobic" town. Ex. D to Def. Resent'g Mem. at 2, ECF No. 57-3 ("Report of Richard B. Krueger, M.D."). Defendant's parents are married and reside in Australia. PSR ¶ 48. Defendant is the second of three children. *Id.* ¶ 49. Defendant's father was in and out of jobs throughout Defendant's childhood. *Id.* ¶ 51.

Defendant had a difficult upbringing. PSR ¶ 51. He described his father as an alcoholic who physically abused him and his brothers; Defendant's mother encouraged the abuse. *Id.* Between the ages of ten and fifteen, Defendant was repeatedly molested and anally raped by his uncle. *Id.* ¶ 52. Defendant's uncle was eventually charged in connection with the alleged sexual abuse of his own children—one of whom took his own life—but he was ultimately acquitted. *Id.*; Report of Richard B. Krueger, M.D. at 7.

In 1992, Defendant married his former wife, with whom he has two children. *Id.* ¶ 53. In 2011, Defendant told his wife he is gay; they officially divorced in 2018. *Id.* Defendant's ex-wife and children are aware of the instant offense and remain supportive. *Id.* In 2012, Defendant traveled to the United States with a male partner. *Id.* ¶ 54. From 2012–2021,

4

Defendant lived in New York and New Jersey. *Id.* According to Immigration and Custom Enforcement ("ICE") records, Defendant's visa lapsed on March 22, 2022. *Id.* ¶ 55.

### 2. *Educational and Employment History*

From 1980–1984, Defendant attended Warwick State High School in Queensland, Australia. *Id.* ¶ 72. He withdrew after completing eleventh grade and enrolled in a two-year training program with the Queensland Ambulance Service. *Id.* He completed the program in 1986 and went on to receive an associate diploma in health science in 1996. *Id.* Defendant was ultimately certified as a paramedic. *Id.*

In 2014, Defendant was hired by the Consulate General of Australia in New York City as a finance officer and corporate support officer. *Id.* ¶ 75. In 2016, Defendant began his employment as an office manager for the Australian Trade and Investment Commission, also based in New York. *Id.* ¶ 74.

### 3. *Prior Convictions*

Defendant has no prior convictions. *Id.* ¶¶ 41–46.

### 4. *Physical and Mental Health*

Defendant has been diagnosed with Type 2 diabetes, high blood pressure, and high cholesterol. *Id.* ¶ 59–60. According to Defendant's medical records from the Metropolitan Detention Center, Defendant was hospitalized in early 2021 after experiencing difficulty and pain urinating due to *E. coli* cultures. Gov't Sent'g Mem., Exhibit A, ECF No. 32-1.

Defendant has reported feeling sadness and shame from the physical and sexual abuse he experienced in his youth. PSR ¶ 62. Defendant repressed his sexuality until adulthood due to

5

the abuse he experienced. *Id.* Defendant noted he has never sought long-term therapy due to his discomfort discussing himself and his feelings with others. *Id.*

### 5. *Substance Abuse*

Defendant has a history of substance use. He reported consuming alcohol, marijuana, methamphetamine, and gamma hydroxybutyrate (a sedative known colloquially as a "date rape drug") in the past. *Id.* ¶¶ 68–70. Defendant stated he began using methamphetamine and gamma hydroxybutyrate in early 2019 at the suggestion of his sexual partners. *Id.* ¶ 69. Defendant referred to this sex-motivated drug use (or, alternately, drug-fueled sex practice) as "chemsex." *Id.* Defendant claimed to have ceased engaging in "chemsex" in March 2020 after he learned one of his sexual partners had used his cellphone to access child pornography. *Id.*

### 6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

## B. The Need for the Sentence Imposed

The second Section 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. Defendant's possession of child pornography and obscenity "harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307

(2008). By possessing and sharing child obscenity materials, Defendant demonstrated no regard for the harm caused by these materials, including the re-victimization of abused children. *See United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013). "Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse." *Id.* at 216; *see also United States v. Holston*, 343 F.3d 83, 88–89 (2d Cir. 2003) (acknowledging the existence of an extensive national market in child pornography and recognizing the production of child pornography stimulates the demand for materials depicting child obscenity); *United States v. Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (summary order) (affirming the district court's sentence of 120 months' imprisonment for, *inter alia*, distribution and possession of child pornography upon the district court's finding the defendant contributed to the creation of a market for child pornography and thereby caused life-long harm to children subjected to this form of abuse). The Court's sentence serves to deter Defendant and others from engaging in similar criminal activity, from disregarding the law of the United States, and from partaking in illicit activity. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third Section 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

For Counts One through Six (Distribution of Child Pornography), Defendant faces a statutory minimum term of sixty (60) months' imprisonment and a maximum term of twenty (20) years' imprisonment, pursuant to 18 U.S.C. § 2252(b)(1).  For Count Seven (Possession of Child Pornography), Defendant faces a statutory maximum term of twenty (20) years' imprisonment and no minimum term, pursuant to 18 U.S.C. § 2252(b)(2).  On all counts, Defendant faces a statutory minimum term of five (5) years' supervised release and a maximum term of life.  18 U.S.C. § 3583(k).  He is ineligible for probation.  18 U.S.C. § 3561(a)(3); U.S.C. § 2252(b)(1).

In addition to terms of imprisonment and supervised release, Defendant faces a maximum fine of $250,000.00 on each count, pursuant to 18 U.S.C. § 3571(b), and a mandatory special assessment of $100.00 per count, pursuant to 18 U.S.C. § 3013.  He faces an assessment of $5,000.00 per count under the Justice for Victims of Trafficking Act of 2015 (18 U.S.C. § 3014) and is subject to the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (18 U.S.C. § 2259A), which requires the Court to impose a fine of:  (1) not more than $17,000.00 on any person convicted of an offense under 18 U.S.C. § 2252(a)(4) or § 2252A(a)(5); (2) not more than $35,000.00 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000.00 on any person convicted of a child pornography production offense, in addition to any other criminal penalty, restitution, or special assessment authorized by law, and in consideration of the factors in 18 U.S.C. § 3553(a) and 18 U.S.C. § 3572.

Finally, Defendant faces mandatory restitution pursuant to 18 U.S.C. § 3663A.  He must comply with the requirements of the Sex Offender Registration and Notification Act, 34 U.S.C. § 20901, *et seq.*  He is subject to criminal forfeiture in accordance with the Order of Forfeiture.

*See* Order of Forfeiture, ECF No. 38-1. He is also subject to removal from the United States. *See* PSR ¶ 55.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth Section 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The applicable Guideline for 18 U.S.C. § 2252 offenses is U.S.S.G. §2G2.2, which provides a base offense level of 22. Offenses covered by § 2G2.2 are grouped together for Guideline calculation purposes. U.S.S.G. §3D1.2. Two (2) levels are added because the material in the offense involved prepubescent minors or minors under the age of twelve (12) years. U.S.S.G. §2G2.2(b)(2). Two (2) levels are added because Defendant knowingly engaged in the distribution of child pornography. U.S.S.G. §2G2.2(b)(3)(F). Four (4) levels are added because the images and videos possessed by Defendant depicted violence and prepubescent children—including infants and toddlers—and the sexual penetration of minors. U.S.S.G. §2G2.2(b)(4)(A), (B). Two (2) levels are added for the use of a computer. U.S.S.G. §2G2.2(b)(6). Finally, five (5) levels are added because Defendant possessed 600 or more images of child pornography.[1] U.S.S.G. §2G2.2(b)(7)(D).

These upward enhancements result in an adjusted offense level of 37. Three levels are subtracted due to Defendant's acceptance of responsibility and his timely notification of his

---

[1] Defendant possessed 673 images and 500 videos of child pornography. The Guidelines treat each video as containing seventy-five (75) images. U.S.S.G. §2G2.2 n. 6(B)(ii). Defendant therefore possessed the equivalent of 38,173 images of child pornography. U.S.S.G. 2G2.2(b)(7).

intention to enter a guilty plea. PSR ¶ 38–39. These reductions result in a total adjusted offense level is 34. *Id.* ¶ 40.

As previously stated, Defendant has no prior criminal convictions, resulting in a total criminal history score of zero and a Criminal History Category of I. *Id.* ¶¶ 41–46; U.S.S.G. Chapter 5, Part A. A total offense level of 34 and a Criminal History Category of I result in a Guidelines range of 151–188 months' imprisonment. *Id.* ¶ 83.

All parties agree with this calculation but disagree as to whether the Court should impose a sentence within the recommended Guidelines range. Defense counsel recommends a "significant sentence departure from the [G]uidelines." Def. Resent'g Mem. at 8. The Government requests a sentence at the low end of the Guidelines. Gov't Resent'g Mem. at 1. At Defendant's original sentencing, Probation recommended the statutory minimum sentence of sixty (60) months' imprisonment on each count, to run concurrently. U.S. Prob. Sent'g Rec. at 1, ECF No. 22-1. Probation did not submit an updated sentencing recommendation in advance of this resentencing.

The Court appreciates the sentencing arguments raised by all parties and has thoroughly considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Although not addressed by either party, the Court considers the Sentencing Commission's statement in U.S.S.G. §5D1.2, recommending courts impose the statutory maximum term of supervised release if the conviction is a sex offense. U.S.S.G. § 5D1.2(b)(2). *See* U.S.S.G. §5D1.2 cmt. 1 (defining a "sex offense" to include offenses perpetrated under

Chapter 110 of Title 18 of the United States Code). The Court considers, but does not give controlling weight, to this statement.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court's sentence avoids unwarranted sentence disparities. The Second Circuit remanded the case after finding this Court "plainly erred by failing to provide an explanation as to why it concluded that the 156-month sentence for Stewart's offenses, rather than a lower sentence, was necessary to avoid unwarranted sentencing disparities." USCA Mandate at 3, ECF No. 43. The Court has considered the relevant sentencing statistics for child pornography offenses and has situated Defendant within that data. Defense counsel argues "the majority of non-production child pornography offenders (59.0%) received a variance below the guideline range." Def. Sent'g Mem. at 5. But United States Sentencing Commission data from 2024 indicates the average sentence imposed on defendants convicted of *distribution* of child pornography was 138 months' imprisonment and 37.7% of the sentences imposed on defendants in child pornography cases generally were within the recommended Guidelines range. *See* Gov't Resent'g Mem. at 14. Defendant was convicted on six counts of distributing child pornography, rather than mere possession of the same. *See, e.g.*, PSR ¶ 1.

The Court's sentence is consistent with Defendant's egregious conduct. As the Government notes, Defendant's criminal conduct "was of the utmost seriousness." Gov't Resent'g Mem. at 10. The materials in Defendant's possession "depict horrifying scenes of the forcible rape of infants and young children, many of which are minutes long." *Id.* And

11

Defendant "deployed sophisticated means" by moving illicit conversations onto encrypted chat platforms. *Id.* Finally, the Government presents screenshot evidence showing "it is incontrovertible that when asked if he had access to young children, [D]efendant wrote . . . 'No access . . . some fingering my nephew and Jacking off over him . . . years [a]go[.]'" *Id.* From this, the Court can and does "reasonably conclude that the defendant is more likely to become a hands-on abuser." *Id.*

### G. The Need to Provide Restitution

Finally, the seventh Section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is mandatory in this case. 18 U.S.C. § 3663. However, it is presently indeterminable as the Government has yet to identify Defendant's victims. PSR ¶ 95. Therefore, the Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety (90) days after sentencing to determine the specific amount owed to the Defendant's victims.

## IV.   CONCLUSION

And finally, the Court has this to say: This Court always considers the statistical universe of sentencing in imposing sentence. This Court wrote a book published by Garland Press in 1988 titled *Criminal Sentencing in Three Nineteenth Century Cities: New York, Boston, and Philadelphia*, based upon detailed analysis of thousands of cases. This Court always considers each of the Section 3553(a) factors in analyzing and resolving the occasional and important tensions between specific and general deterrence needed to avoid unwarranted disparities. This Court always considers the benefits of artificial intelligence in reviewing averages, means, and typical sentences in comparable cases. This Court carefully does so in this case.

But a basic reality in the world of computer analysis is simply this tried-and-true wisdom—known to all sophisticated consumers and compilers of information in our computer assisted universe—garbage in, garbage out. To ignore the admitted abuse of Defendant's nephew; to accept the ridiculous assertion Defendant is not a pedophile; to consider the sentence in this case to warrant an average or a mean sentence would result in manifest injustice to the victims of Defendant's crimes. Insanity is doing the same thing over and over again expecting a different result. Not in this Court, not in this case, and not on my watch. Unwarranted sentence discrepancies must be avoided; sentences avoiding just punishment must also be avoided. The behavior of this defendant was not average; the behavior of this defendant was mean. The sentence of this defendant was not unwarranted.

Properly deployed, artificial intelligence can be a useful tool; improperly deployed, artificial intelligence would render judges into useless, foolish puppets—into hapless astronauts named Dave, governed by artificial computers named Hal. This is not a *2001: A Space Odyssey* world in which algorithms dictate sentences. This is the real world of flesh and blood and of laws designed to protect our children. We serve justice, not algorithms.

In light of the summary order of the Circuit, the behavior of Defendant during his incarceration, and the prospect of his prompt deportation upon completion of his incarceration to the land down below, the Court sentences Defendant to 120 months' incarceration, to be followed by five (5) years' supervised release with both the standard and special conditions of supervision; forfeiture as set forth in the Order of Forfeiture; and the $700.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of 18 U.S.C. § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and the Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 12, 2025
       Brooklyn, New York